UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

CHIKEZIE OTTAH,                                        No. 22-CV-10435-JMF

               Plaintiff,

      -against-

MTA,

               Defendant.

------------------------------------------------------------------ x


## REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF
## MOTION TO DISMISS


METROPOLITAN TRANSPORTATION AUTHORITY
Office of the General Counsel
Jason Douglas Barnes
2 Broadway, 24th Floor
New York, NY 10004
(212) 878-7215
jabarnes@mtahq.org
Attorneys for Defendant

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................. 1

**ARGUMENT** ......................................................................................................... 1

**I.       PLAINTIFF CANNOT CHALLENGE PRIOR DECISIONS** ................................ 1

**II.      A *MARKMAN* HEARING IS NOT WARRANTED** ................................. 4

**CONCLUSION** ..................................................................................................... 6

# TABLE OF AUTHORITIES

**Cases**

*Brady Constr. Innovations, Inc. v. Perfect Wall, Inc.*, 290 F. App'x 358 (Fed. Cir. 2008)............ 2

*J.G. Peta, Inc. v. Club Protector, Inc.*, 65 F. App'x 724 (Fed. Cir. 2003) ..................................... 5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ......................................... 2

*Ottah v. Bracewell LLP*, No. 21-CV-00455-KPF, 2021 U.S. Dist. LEXIS 237300, 2021 WL
    5910065 (S.D.N.Y. Dec. 10, 2021) ...................................................................................... 3, 5, 6

*Ottah v. Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018) ................................................................. 3

*Ottah v. First Mobile Techs.*, No. 10-CV-7296-CM, 2011 U.S. Dist. LEXIS 102721, 2011 WL
    4343269 (S.D.N.Y. Sept. 6, 2011) .................................................................................................. 6

*Ottah v. First Mobile Techs.*, No. 10-CV-7296-CM, 2012 U.S. Dist. LEXIS 21734, 2012 WL
    527200 (S.D.N.Y. Feb. 17, 2012) ................................................................................................. 6

*Ottah v. Nat'l Grid*, No. 19-CV-8289-PAE-RWL, 2020 U.S. Dist. LEXIS 87864, 2020 WL
    2539075 (S.D.N.Y. May 19, 2020) ............................................................................................... 6

*Ottah v. Nat'l Grid*, No. 19-CV-8289-RAE-RWL, 2020 U.S. Dist. LEXIS 74585 (S.D.N.Y. Apr.
    27, 2020)....................................................................................................................................... 6

*Ottah v. Verifone Sys.*, 524 F. App'x 627 (Fed Cir. 2013) ....................................................... 2, 3

*Ottah v. Verizon Servs. Corp.*, No. 19-CV-8552, 2020 U.S. Dist. LEXIS 125949, 2020 WL
    4016739 (S.D.N.Y. July 16, 2020).......................................................................................... 2, 4, 6

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 3

*Radiancy, Inc. v. Viatek Consumer Products Group*, No. 13-CV-3767, 2015 U.S. Dist. LEXIS
    5056, 2015 WL 221063 (S.D.N.Y. Jan. 14, 2015)............................................................... 4, 5, 6

*Revlon Consumer Products Corp. v. Estee Lauder Companies*, No. 00-CV-5960, 2003 U.S. Dist.
    LEXIS 13004, 2003 WL 21751833 (S.D.N.Y.July 30, 2003) ................................................. 4, 5

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357 (Fed. Cir. 2002) .... 3

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................................ 1

**Regulations**

U.S. Patent No. 7,152,840............................................................................................................ 3, 4

## PRELIMINARY STATEMENT

On March 17, 2023, Defendant MTA moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 12-15).[1] In its papers, the MTA argued that both issue preclusion—deriving from Plaintiff Ottah's prior litigation against Bracewell, LLP about the same device in MTA busses—governs the key issues for Ottah's claims and bars any chance of their succeeding, and that Ottah otherwise fails to state a claim, in part because prosecution history estoppel and the history of prior court decisions concerning the '840 Patent prevent the arguments Ottah makes here. In response, the Court issued an Order (Dkt. No. 18) providing that Plaintiff Ottah must by April 28, 2023, either amend the Complaint or oppose the motion. Ottah chose the latter course and filed three documents labeled as a Memorandum of Law (Dkt. No. 19), an "Appendix" (appearing in the docket as an "Affirmation") (Dkt. No. 20), and a Declaration (Dkt. No. 21).[2] Those opposition papers, like the Complaint, are difficult to parse, but in essence they appear to argue that prior court decisions misconstrued the scope of the '840 Patent claim and they call for a *Markman* hearing to determine that scope, among other irrelevant issues mentioned, such as "prior art" of book holders. Ultimately, Ottah's opposition presents no valid legal or factual basis for disputing the arguments presented in the moving papers, and the Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.      PLAINTIFF CANNOT CHALLENGE PRIOR DECISIONS

Ottah's opposition appears to argues the claim's scope includes screwed-in devices only

---

[1] Capitalized terms not defined herein have the same meaning as in Defendant's Memorandum of Law in Support of Motion to Dismiss (Dkt. No. 13).

[2] As in the Complaint, the pagination in these documents is inconsistent and citations will therefore refer to the page number in the Court's entry stamp.

removable with tools. Dkt. No. 19 at 10, 25; Dkt. No. 21 at 4-5, 6. He argues that the prior

decisions erroneously construed the claim because the "defendant … mislead the court into

thinking that resilient clip… is stressing no tools," and he requests that the court "overturn the

previous defendant claims." Dkt. No. 19 at 4, 18, 26, 27.[3][4][5] But Ottah cannot now challenge

those decisions, which bind this case by collateral estoppel and *stare decisis*.

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d

967, 976-979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370, 384 (1996). "Under the principles of *stare*

*decisis* and the Supreme Court's guidance in *Markman*, [the Federal Circuit] follows the claim

construction of prior panels absent exceptional circumstances." *Brady Constr. Innovations, Inc.*

*v. Perfect Wall, Inc.*, 290 F. App'x 358, 363 (Fed. Cir. 2008)). This is not the first time Ottah has

argued that earlier '840 Patent cases were wrongly decided, to which the Federal Circuit

responded: "[t]his court had previously reviewed claim construction of the '840 Patent, and ruled

that several claim limitations require that the claimed book holder has a 'removable mounting.'

The VeriFone court held that mounts that cannot be removed without tools do not literally

infringe claim 1, stating that claim 1'"is clear on its face' and that 'nothing in the specification

suggests that the claim language should be interpreted in a way at variance with its ordinary

meaning.'… The issue was finally decided and is not subject to collateral review. No error has

been shown in this claim construction, and no reason for departing from the rules of collateral

---

[3] But confusingly Ottah elsewhere admits that a "resilient clip" is removable without tools or screws. Dkt. No. 19 at 11, 13, 20-24; Dkt. No. 21 at 3, 6.

[4] Notably, Ottah also admits that the UTC device on MTA busses is screwed on. Dkt. No. 20 at 10. Though elsewhere he appears to say the opposite, that it allows for "hand free removal" Dkt. No. 19 at 15.

[5] Conversely, Ottah also appears to suggest in places that some courts have expanded the scope of the '840 Patent to cover camera technology. *See* Dkt. No. 19 at 5-6; Dkt. No. 20 at 20; Dkt. No. 21 at 3, 6. This is not accurate; the courts have uniformly rejected such an argument. *E.g., Ottah v. Verizon Servs. Corp.*, No. 19-CV-8552-LGS, 2020 U.S. Dist. LEXIS 125949, at *7-8, 2020 WL 4016739 (S.D.N.Y. July 16, 2020); *Ottah v. Verifone Sys.*, 524 F. App'x 627, 629 (Fed Cir. 2013).

estoppel or *stare decisis* as to this claim term." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1139-40

(Fed. Cir. 2018) (internal citations omitted) (citing, *inter alia*, *VeriFone*, 524 F. App'x at 629).

The *Bracewell* court likewise explicitly found—regarding the same allegedly infringing

device at issue here—that "the single claim in the '840 Patent is clearly limited in scope to a

book holder that is easily removable without the use of tools" and therefore "does not extend to

[the MTA's] camera mounting device" because the '840 Patent "plainly does not include a

bolted-on, in-vehicle technology holder," *Ottah v. Bracewell LLP*, No. 21-CV-00455-KPF, 2021

U.S. Dist. LEXIS 237300, at *14-16, 2021 WL 5910065 (S.D.N.Y. Dec. 10, 2021), *aff'd*  No.

2022-01876, 2022 U.S. App. LEXIS 30894, 2022 WL 16754378 (Fed. Cir. Nov. 8, 2022.

In any case, the prior decisions correctly interpreted the claim. Claim langauge is

generally given its "ordinary and customary meaning," that is, "the meaning that the [language]

would have to a person of ordinary skill in the art in question at the time of the invention."

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc)). A court should not

construe claim language that is clear on its face. *See Tate Access Floors, Inc. v. Interface*

*Architectural Res., Inc.*, 279 F.3d 1357, 1371 (Fed. Cir. 2002). The '840 Patent claim

encompasses "[a] book holder for removable attachment… comprising: a book support platform

[with] clamps, … [to] retain the book …; a clasp comprising a clip head, a clip body and a pair

of resilient clip arms, the clip arms adjustably mounted on the clip head, the clip head attached to

the clip body; and an arm comprising a first end and a second end and a telescoping arrangement,

the clasp on the first end, the second end pivotally attached to the book support platform wherein

the book holder is removably attached…" '840 Patent col. 6 ll. 14-38. Despite Ottah's arguments

to the contrary,[6] this language describes a device that is mounted by means of a resilient two-

---

[6] Ottah appears to argue that the '840 Patent's scope is not limited by this claim description. Dkt. 19 at 10. This is
not correct. *Verifone Sys.*, 524 F. App'x at 629 ("[T]he claims define the scope of [the] invention." (quoting *Alloc*,

armed clip (*i.e.,* one that can spring back into shape), not fixed to a surface with bolts or screws. [7]

## II.   A *MARKMAN* HEARING IS NOT WARRANTED

Ottah argues that a *Markman* hearing is required to determine the scope of the '840

Patent claim. Dkt. No. 21, at 5, 7. A *Markman* hearing is an evidentiary hearing purposed at

determining the meaning of a Patent claim's terms. But no such hearing is required here.

In support of his position, Ottah cites two decisions: *Radiancy, Inc. v. Viatek Consumer

Products Group*, No. 13-CV-3767, 2015 U.S. Dist. LEXIS 5056, 2015 WL 221063 (S.D.N.Y.

Jan. 14, 2015), and *Revlon Consumer Products Corp. v. Estee Lauder Companies*, No. 00-CV-

5960, 2003 U.S. Dist. LEXIS 13004, 2003 WL 21751833 (S.D.N.Y.July 30, 2003). Contrary to

Ottah's interpretation, both decisions recite the above-referenced law providing that courts

decide claim construction as a matter of law, first by examining claim language by its ordinary

and customary meaning, then looking to other intrinsic evidence of the patent's specification and

administrative prosecution history. And only if those do not resolve the matter, do courts look to

---

*Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003))). He also appears to argue that the term "clasp" is so broad that it includes a "base with screw," "holes, screw, bolt, rivet, others." Dkt. No. 20 at 7, 10-11, 12, 13; Dkt. No. 21 at 2. But such generalized use of the term clasp is belied by the claim's explanation that the clasp is "comprising a clip head, clip body, and… resilient clip arms." He has made similar arguments in past cases, which the courts rejected. *See Verizon Servs. Corp.*, 2020 U.S. Dist. LEXIS 125949, at *7-8.

Ottah also appears to argue that "secure" means "fix or fasten" and therefore encompasses fixed mounting. Dkt. No. 19 at 9. But, setting aside that this interpretation is incorrect, "secure" does not appear in the claim language. He appears to argue that the term "interconnecting" would implicate "elements of … screw, screwdriver, rivet, nuts, mouse, others." Dkt. No. 19 at 3; Dkt. No. 21 at 3. But that term is used in reference to the telescoping arm between the clasp and the book platform; it is irrelevant to the mounting and in any case does not suggest screws, rivets, and nuts. Finally, Ottah appears to argue that the claim covers software and electronics interfaces like USB, VGA, and serial port (Dkt. No. 19 at 4, 9, 19; Dkt No. 20 at 11-14, 16; Dkt. No. 21 at 3-4, 6), which is not only false but totally irrelevant to this case.

[7] Although the claim language governs, it is worth pointing out that other intrinsic evidence from the patent registration also runs counter to Ottah's current interpretation. The Summary of the Invention highlights removability as a key feature. '840 Patent col. 2, ll. 1-4, 22-25. And '840 Patent's detailed description explains that the clip arms are what hold the book holder to another object. "To secure the book holder **10,** the user forces the clip arms *42a* and *42b* apart to allow the frame member to slip between the clip arms *42a, 42b.* The clip arms *42a, 42b* then snap resiliently together to hold the book holder **10** to the frame member (not shown) of the mobile vehicle (not shown)." '840 Patent col. 3, ll. 33-38. Its only mention of screws and other fasteners concerns the assembly of the clip itself internal to the book holder, not as a means of fixing the book holder to an external object (referred to as a "frame member" in the description). '840 Patent col. 4, ll. 36, 51, 56, 65.

extrinsic evidence presented in a *Markman* hearing, such as expert testimony, dictionaries, and treatises. *Radiancy, Inc.*, 2015 U.S. Dist. LEXIS 5056, at *4-5; *Revlon Consumer Prods. Corp.*, 2003 U.S. Dist. LEXIS 13004, at *25-47; *Bracewell LLP*, 2021 U.S. Dist. LEXIS 237300, at *11. Moreover, the *Radiancy* and *Revlon* decisions say that "'district courts are not required to follow any particular procedure in conducting claim construction[. W]hile some courts have found it useful to hold hearings such a procedure is not always necessary.'" *Radiancy, Inc.*, 2015 U.S. Dist. LEXIS 5056, at *3 (quoting *J.G. Peta, Inc. v. Club Protector, Inc.*, 65 F. App'x 724, 727 n.2 (Fed. Cir. 2003)). "A *Markman* hearing is unnecessary, for example, if the Court is able to determine the scope of the claims based on intrinsic evidence, dictionaries, and expert reports." *Id.* (citing *inter alia Wi-Lan, Inc. v. LG Elecs., Inc.*, No. 10-CV-432, 2011 U.S. Dist. LEXIS 84439, 2011 WL 3279075, at *18 (S.D.N.Y. Aug. 2, 2011)).

*Radiancy* and *Revlon* both, in fact, held that a *Markman* hearing was *not* necessary for at least some of the terms in those cases, because the claim language was clear and the terms were not overly technical. *Radiancy, Inc.*, 2015 U.S. Dist. LEXIS 5056, at *3-4 ("The Court finds that a Markman hearing is unnecessary with respect to the first three phrases because those terms are clear, unambiguous, and non-technical"); *Revlon Consumer Prods. Corp.*, 2003 U.S. Dist. LEXIS 13004, at *14 (declining to hold a Markman hearing where the claims were "neither ambiguous nor highly technical"); *see also J.G. Peta, Inc. v. Club Protector, Inc.*, 65 F. App'x 724, 727 n.2 (Fed. Cir. 2003) (cited by *Radiancy*) (affirming district court's conclusion that hearing was unnecessary in light of "simple technology and straightforward claim language at issue"). In contrast, *Radiancy* did set a hearing for highly technical terms related to the claim for a hair removal device at issue there, namely "pulsed heating of said one or more heat elements" and "such that the heat elements do not burn said skin surface." *Radiancy, Inc.*, 2015 U.S. Dist.

LEXIS 5056, at *4.

A *Markman* hearing is unnecessary here. As discussed in the MTA's moving papers, courts have repeatedly held that the scope of the '840 Patent claim can be construed from its plain language and that said language does not extend to fixed devices that are not removable without the use of tools. *E.g. Bracewell LLP*, 2021 U.S. Dist. LEXIS 237300, at *16; *Verizon Servs. Corp.*, No. 19-CV-8552-LGS, 2020 Dist. LEXIS 125949, at *6-7. At least one of these times, the Court explicitly considered and ruled out a *Markman* hearing. *See Ottah v. Nat'l Grid*, No. 19-CV-8289-RAE-RWL, 2020 U.S. Dist. LEXIS 74585, at *29, n. 13 (S.D.N.Y. Apr. 27, 2020) (citing *Radiancy* and *Revlon* and holding in report and recommendation that a *Markman* hearing was not required to interpret the '840 Patent because its sole claim "consists of commonly understood words… all of which can be understood by lay judges.").[8]

## CONCLUSION

For the foregoing reasons and those set forth in the moving papers, the MTA respectfully requests that the Court grant its motion and dismiss all claims against it with prejudice.

---

[8] In the earliest '840 Patent case, *Ottah v. First Mobile Technologies*, prior to other court decisions interpreting the scope of the claim, Judge Colleen McMahon ordered the parties to confer and decide on the propriety of a *Markman* hearing in connection with denying a motion to dismiss. No. 10-CV-7296-CM, 2011 U.S. Dist. LEXIS 102721, at *8-9, 2011 WL 4343269 (S.D.N.Y. Sept. 6, 2011). (The defendant later filed a letter expressing its belief that the hearing was unnecessary and relating that Ottah's position was unclear, and no hearing was held. *See* Letter, *First Mobile Techs.*, No. 10-CV-7296-CM, Dkt. No. 39.) As discussed in the MTA's moving papers, that case was later disposed on summary judgment. No. 10-CV-7296-CM, 2012 U.S. Dist. LEXIS 21734, 2012 WL 527200 (S.D.N.Y. Feb. 17, 2012). The more recent cases concerning the '840 Patent have been disposed of prior to discovery. *See Ottah v. Nat'l Grid*, No. 19-CV-8289-PAE-RWL, 2020 U.S. Dist. LEXIS 87864, 2020 WL 2539075 (S.D.N.Y. May 19, 2020)(adopting report and recommendation and granting motion to dismiss); *Verizon Servs. Corp.*, 2020 U.S. Dist. LEXIS 125949 (converting motion to dismiss into one for summary judgment and granting); *Bracewell LLP*, 2021 U.S. Dist. LEXIS 237300 , *aff'd* No. 2022-01876, 2022 U.S. App. LEXIS 30894 (Fed. Cir. Nov. 8, 2022) (granting motion to dismiss).

Dated: New York, New York
      May 2, 2023

Respectfully submitted,
Paige Graves
General Counsel
METROPOLITAN
TRANSPORTATION AUTHORITY
2 Broadway, 24th Floor
New York, New York 10004

By: _____
    Jason Douglas Barnes
    Associate Counsel
    jabarnes@mtahq.org
    212-878-7215
    212-878-7398 (fax)

*Attorneys for Defendant*

7